**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **MICHELLE MAGAHA,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-09-1624 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner, Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Michelle Magaha ("Plaintiff") brings this action under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of the Social Security Administration

("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and Supplemental Social

Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. 1382 et

seq. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and

Commissioner's Motion for Summary Judgment ("Commissioner's Motion"). The Court has

reviewed said motions and the applicable law. No hearing is deemed necessary. Local Rule

105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion,

DENIES Commissioner's Motion, and REMANDS this case for further proceedings consistent

with this opinion.

## I. Background

Plaintiff filed an application for DIB and SSI on December 16, 2006, alleging disability

from November 30, 2004. (R. 18). The claims were both denied initially and upon

reconsideration. (R. 18). On June 6, 2008, Plaintiff testified at a hearing by video, held before

an Administrative Law Judge ("ALJ"), in Richmond, Virginia. (R. 18). Pharmacy records were

added to the record subsequent to the hearing. (R. 18).

The ALJ also arranged for Plaintiff to have a musculoskeletal/neurological consultative

examination after the hearing. (R. 18). The subsequent report, found at Exhibit 12F, was made

part of the record. (R. 18). Plaintiff's counsel was proffered the report and invited to comment

on it. (R. 18). However, as of the date of the ALJ's decision, counsel had not responded. (R.

18).

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20

C.F.R. §§ 404.1520 and 416.920.[1] At the first step, the ALJ determined that Plaintiff has not

engaged in substantial gainful activity ("SGA") since November 30, 2004, the alleged onset date.

(R. 20). At the second step, the ALJ determined that Plaintiff has the following severe

impairment: "degenerative disc disease of the thoracic and lumbosacral spine with lumbosacral

radiculopathy, a left wrist fracture with residual pain subsequent to surgery, and degenerative

joint disease of her knees." (R. 21). At the third step, the ALJ determined that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals one of the

listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). (R. 21). Next,

the ALJ determined Plaintiff's residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that
> she is limited to lifting weights of five pounds. She can work on level surfaces
> only, cannot bend, push, pull, climb steps, crawl, kneel or squat, and must avoid
> working around heights and moving machinery. Due to her musculoskeletal pain
> and the effects of prescription pain medication, she can understand, carry out and

---

[1] 20 C.F.R. § 404.1520 pertains to DIB and 20 C.F.R. § 416.920 pertains SSI. While DIB and SSI are not one in the same, for all practical purposes, the analytical framework used to determine if a claimant qualifies for either involves the same sequential five-step process.

remember only simple instructions as found in entry-level skilled work.

(R. 22). At step four, the ALJ found that based on her RFC, Plaintiff was not capable of performing her past relevant work ("PRW") as a cashier. (R. 26). At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that she can perform. (R. 26). Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act from November 30, 2004, through the date of the decision, August 20, 2008. (R. 27-28).

### III. <u>Standard of Review</u>

The role of this Court is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. §405(g); <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Johnson v. Califano</u>, 434 F. Supp. 302, 307 (D. Md. 1977). The Court's role is a limited one within the Act. <u>Freeman v. Harris</u>, 509 F. Supp. 96, 99 (D.S.C. 1981). Thus, ordinarily if there is substantial evidence to support the decision of the Commissioner, then that decision must be upheld. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986). This Court cannot try the case <u>de novo</u> or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. <u>Id.</u>

The Court must also determine whether the Commissioner followed correct procedures.

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517. After review, the Court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. 42 U.S.C. § 405(g); Virek v. Finch, 438 F.2d 1157, 1158 (4th Cir. 1971).

Finally, it must be noted that hearings on applications for Social Security disability entitlement are not adversary proceedings. Easley v. Finch, 431 F.2d 1351 (4th Cir. 1970). Moreover, the Social Security Act is a remedial statute, which is to be broadly construed and liberally applied in favor of beneficiaries. Dorsey v. Bowen, 828 F.2d 246 (4th Cir. 1987). A claimant is entitled to a full and fair hearing and failure to have such a hearing may constitute sufficient cause to remand the case. Sims v. Harris, 631 F.2d 26 (4th Cir. 1980).

## IV. Analysis

Plaintiff raises five arguments.[2] First, by not considering Plaintiff's obesity, Plaintiff contends the ALJ failed to evaluate all of Plaintiff's impairments. Second, Plaintiff suggests that there is support in the record for Plaintiff to meet or equal a Listing. Third, Plaintiff objects to the ALJ's decision to give "one-time" consultative examiner, neurologist Seth Tuwiner, greater weight than the opinion of Plaintiff's treating doctor, Larry Shranatan. Fourth, Plaintiff argues that if sedentary hypotheticals are presented to the Vocational Expert ("VE"), then sedentary jobs must be produced, which was not done in this case. Finally, Plaintiff claims the ALJ's decision is not supported by the medical evidence because the questions presented to the VE by Plaintiff's attorney and by the ALJ were very similar yet resulted in noticeably different responses. This in turn makes the testimony of the VE inconsistent and unreliable. Plaintiff asserts that to the

---

[2] Plaintiff's Motion presents these questions in a different order. The Court finds this altered order is more consistent with the five-step sequential inquiry as stated within the regulations and therefore facilitates the overall discussion more efficiently.

extent the ALJ relied on the VE's testimony, the decision is not supported by substantial evidence.[3]

## 1. The ALJ Did Not Fail To Evaluate Plaintiff's Obesity

Plaintiff claims the ALJ failed to contemplate obesity as an impairment. The severity of a medical impairment is initially determined at step two.[4] 20 C.F.R. § 404.1520(a)(4)(ii). A seemingly obvious requirement of step two is that a claimant has an identifiable impairment. If an impairment has not been identified either by the claimant or by a medical source in the record, then it is not an obvious issue for the ALJ to consider. Here, the question is whether the mere mention of Plaintiff's weight and height alone triggers the ALJ's duty to address Plaintiff's purported obesity. Under the regulations and facts of this case, the Court finds that the answer is "no."

The regulations at step two clearly state that a claimant will be found not disabled if a claimant does not have a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirements, we find that you are not disabled."). Obesity is identified as a medically determinable impairment and generally addressed by Social Security Ruling 02-1P, "Evaluation of Obesity." It states, "When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height." 2000 WL 628049 *3 (SSA). In addition, "When the evidence in a case does not include a diagnosis of obesity, but

---

[3] Because arguments four and five extensively overlap, the Court will address them together.

[4] Step three also considers severity but in the context of whether a "severe impairment" meets a Listing; and only after it has been properly found at step two.

does include clinical notes or other medical records showing consistently high body weight or BMI,[5] we may ask a medical source to clarify whether the individual has obesity." Id. This explicitly gives the ALJ the discretion to seek an opinion in the absence of a diagnosis of obesity. Therefore, the Court does not agree with Plaintiff's interpretation that SSR 02-1p "requires the ALJ to consider obesity." Here, the record does not reflect a diagnosis of obesity.

Equally true, the record does not demonstrate a "consistently high weight or BMI" such that the ALJ should have sought clarification on the issue. Plaintiff asserts in her motion that her "BMI has consistently been above 30." (Pl. Mot. 6). SSR 02-1p acknowledges that BMI values alone are not determinative. It is possible for a person to have a BMI of 30 or above but be of a more muscular build and, therefore, not obese. Likewise, a person with a BMI below 30 could be obese if the weight comes from having a large percentage of body fat. The ALJ has the discretion to pursue the issue or not, particularly when there is no actual diagnosis or mention of weight as a factor of Plaintiff's poor health.

Significantly, Plaintiff does not reference a single instance in the record in which either she or a medical source states that she is obese. The first time that Plaintiff presents obesity as an issue is in Plaintiff's Motion. There, Plaintiff identifies obesity as a condition and sets forth instances in the record where her "BMI has consistently been above 30." (Pl. Mot. 6). However, none of these instances states that she is obese or actually lists her BMI. Following a consultative exam by Dr. Twuiner, he did not opine that Plaintiff was obese, nor whether her weigh posed an impairment.

Absent the single note suggesting that Plaintiff should exercise to lose weight for her

_____

[5] BMI stands for body mass index. "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$). For adults, both men and women, the [National Institutes of Health] Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" SSR 02-1p, 2000 WL 628049 *2 (September 12, 2002).

back pain, the Court has not been made aware of anything in the record that would require the ALJ to consider obesity as an impairment. At this step of the analysis, Plaintiff still bears the burden of proof. While Plaintiff correctly notes that the record does technically reflect a BMI over 30 (by calculating her purported weight and height), SSR 02-1P states that assumptions will not be made "about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairments. We will evaluate each case based on the information in the case record." SSR 02-1p, 2000 WL 628049 *5 (September 12, 2002).

In this instance, the Court does not find that either regulations or the facts require the ALJ to evaluate Plaintiff's obesity as she suggests. Plaintiff did not raise this issue in her Social Security application, at the hearing, or elsewhere in the record. The mere existence of a condition does not necessarily require that the ALJ consider it. See France v. Apfel, 87 F. Supp. 2d 484, 488 (D. Md. 2000) (noting that while there was evidence to establish that the plaintiff experienced symptoms that are often associated with HIV, the plaintiff "failed to establish that these symptoms were HIV-related.").

### 2. The ALJ's Conclusion That Plaintiff Does Not Meet Or Equal A Listing Is Supported By Substantial Evidence

The regulations state that at step three, "If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 404.1520(a)(4)(iii). Plaintiff claims that the circumstances surrounding her back impairment are in line with what is required to meet or equal a listing per 20 C.F.R. § 404 Subpart P. Appendix I Section 1.04.[6] In addition to continued back pain, Plaintiff alleges the factual basis arises from her back surgery in February of 2005, at least two

---

[6] Plaintiff has not argued that her other impairments meet or equal a Listing, instead choosing to focus exclusively on her back impairment. The Court likewise will address the issue only as it pertains to her back impairment.

positive straight leg test results and an MRI done in May of 2008.  With regards to the two the

positive straight leg test results, Plaintiff states that one of them was recorded by consultative

examiner Dr. Tuwiner, to whom "the ALJ afforded controlling weight," and which occurred after

the administrative hearing.  (Pl.'s Mot. 5).  The other specific positive result was performed in

November of 2006.  The Court notes that this represents a span of nine months between results

and the import is they reflect ongoing limitations.  Plaintiff also shows that as recently as May of

2008, Plaintiff obtained an MRI of her lumbar spine, which showed "impingement of her S1

right root."  (Pl.'s Mot. 6).  Even assuming all these facts are true, it does not vitiate the ALJ's

determination that Plaintiff does not meet or equal a Listing.

It is important to address the evidentiary requirements, which apply to all musculosketal

system Listings.  To satisfy any such Listing, the regulations require a physical examination,

which must:

> Include a detailed description of the rheumatological, orthopedic, neurological,
> and other findings appropriate to the specific impairments being evaluated.  These
> physical findings must be determined on the basis of objective observation during
> the examination and not simply a report of the individual's allegation . . . .
> Because abnormal physical findings may be intermittent, their presence over a
> period of time must be established by a record of ongoing management and
> evaluation.  Care must be taken to ascertain that the reported examination findings
> are consistent with the individual's daily activities.

§ 404 Subpart P. Appendix I section 1.00 (2)(D).

The Listing for degenerative disc disease, § 404 Subpart P. Appendix I Section 1.04

("1.04"), states that a claimant must have degenerative disc disease with:

A.  Evidence of nerve root compression characterized by neuro-anatomic
distribution of pain, limitation of motion of the spine, motor loss (atrophy
associated with muscle weakness or muscle weakness) accompanied by
sensory or reflex loss and, if there is involvement of the lower back, positive
straight-leg raising test (sitting and supine);

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of

tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Here, while the ALJ could have provided a more in depth analysis regarding his decision at step three, his efforts to articulate his findings are not wholly inadequate. The ALJ specifically explains that the record does not provide the necessary evidence needed to meet section 1.04A, 1.04B or 1.04C. While Plaintiff correctly observes that there are at least two incidences of a positive straight leg test in the record, a positive straight leg test is but one part of the criteria of satisfying subsection 1.04A. This is a factual determination. Factual findings are out of the purview of this Court. Thus, the Court finds that the ALJ's determination that Plaintiff does not meet or equal a Listing is supported by substantial evidence.

### 3. The ALJ's Decision to Give Controlling Weight to a One-Time Examiner is Not Supported by Substantial Evidence

Plaintiff claims that "[t]he ALJ gave controlling weight to the one-time consultative examiner, Seth Tuwiner, noting that [Plaintiff] indicated to Dr. Tuwiner that she had no limitations in [ADLs] and limitations driving [R. 24]." (Pl.'s Mot. 4). The decision indicates that the ALJ afforded only some weight to Plaintiff's treating doctor. With regards to the "one-time consultant," the ALJ explains that he "gave greater weight to the assessment of Dr. Tuwiner because it was accompanied by objective findings to support his conclusions, including normal neurologic function and no impairment of muscle tone or strength despite [Plaintiff's] subjective complaints of pain." (R. 25). The only inquiry for this Court is whether the ALJ complied with the regulations in reaching his decision. For the reasons provided below, the Court finds that remand is appropriate.

The regulations provide the framework for how medical opinions are to be weighed. "Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." These factors are: 1) examining relationship; 2) treatment relationship; 3) length of treatment relationship; 4) nature and extent of the treatment relationship; 5) consistency; 6) specialization; and 7) other factors. 20 C.F.R. § 404.1527(d)(1)-(6). The explanation regarding "treatment relationship" is particularly germane:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

§ 404.1527(d)(2).

It is clear that the regulations favor a medical source opinion with a more complete perspective rather than an isolated report or exam. The regulations express that a longer relationship allows for a more holistic picture of a claimant's impairment, which by contrast is not possible from objective medical findings viewed in isolation or through a report of an "one-time consultative examiner." It is equally clear is that great deference is afforded the ALJ. That said, the ALJ has a duty to provide "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188 *4.

With this in mind, the Court now examines the ALJ's decision. In relevant part, the ALJ states:

Dr. Shranatan opined on March 8, 2007 that the claimant could lift/carry no more

than five pounds, that she could stand/walk only an hour in an eight-hour workday (and only ten minutes without interruption), sit only ten minutes without interruption, occasionally balance, crouch and kneel, and never climb, stoop or crawl. He also noted limitations on handling, pushing, pulling, and working around heights and moving machinery (Exhibit 7F). Consulting examiner Dr. Tuwiner opined on July 12, 2008 that Ms. Magaha could stand/walk up to four hours in an eight-hour workday, that she had no limitations on sitting, and that she could lift weights of ten pounds occasionally and five pounds frequently. He opined further that her limitations on bending, stooping, and crouching due to her lumbosacral radiculopathy, and that she was limited to occasional handling, fingering and grasping with her left upper extremity. He noted that she had normal fine motor coordination on the left but that frequent handling and grasping may exacerbate her pain symptoms (Exhibit 12F).

The undersigned notes that there is substantial conflict between these assessments. The medical opinion of a treating source is given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the case record. However, controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques (20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p). In this case, the undersigned gave the assessment of Dr. Shranatan some, but not controlling, weight because the assessment was made over a year ago and because his treatment notes through March 19, 2008 reflect only conservative medical care (i.e., prescription of medication) with no objective signs of impaired neurologic function (Exhibit 10F). The undersigned gave greater weight to the assessment of Dr. Tuwiner because it was accompanied by objective findings to support his conclusions, including normal neurological function and no impairment of muscle tone or strength despite the claimant's subjective complaints of pain.

In sum, the above [RFC] assessment is supported by the actual objective findings of treating and consulting examiners, results of diagnostic studies, the assessment of Dr. Tuwiner, and the claimant's admitted [ADL's] despite her allegedly severe and chronic pain.

(R. 25).

The reasoning provided by the ALJ conflicts with the regulations. The fact that an assessment was made over one year ago is not mentioned as a factor for consideration. The reasoning provided cannot be reconciled with the regulations, which state, "When the treating source has seen you a number of times and long enough to have a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." § 404.1527(d)(2)(i).

In addition, the ALJ characterizes the treatment by Plaintiff's doctor as "conservative." Plaintiff claims that to the extent Dr. Shranatan's treatment was "conservative," it was because "despite his recommendation, [Plaintiff] declined to have a second surgery on her back since the first surgery made her pain worse." (Pl.'s Mot. 4). The ALJ claims that that record says nothing with regards to a subsequent surgery, but this is factually incorrect. (R. 24). A progress note by Dr. Sharanatan from March of 2007 states the purpose of the visit was to follow up on back pain. (R. 189). Further, it states that Plaintiff "desires <u>not</u> to pursue surgery at this time." (R. 189) (emphasis in the original). The Court acknowledges that the ALJ's mistake does not necessarily render the ALJ's ultimate characterization wrong. Upon remand the ALJ may still find the course of treatment conservative, but he must provide a better explanation.

What is equally as troubling to the Court is the ALJ's reliance on Dr. Tuwiner's note, which suggests that Plaintiff had no limitations in ADLs.[7] (R. 24). This statement is vehemently opposed in Plaintiff's Motion. Plaintiff asserts that there is nothing in the record to support the notion that Plaintiff ever made such a statement to Dr. Tuwiner. (Pl.'s Mot. 4). The Court notes that Plaintiff reported significant limitations in ADLs in Exhibit 4F. Plaintiff filled out this "Disability Report" and states "I can not get comfortable it hurts to stand or sit for long periods of time." (R. 99).

The issue of determining the extent to which Plaintiff can sit is directly related to determining the availability of work in the national economy – a step five determination. At the lowest end of physical exertion requirements spectrum is "sedentary work." 20 C.F.R. § 404.1567(a). According to the regulations, while "a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

_____

[7] In Exhibit 12F, Dr. Tuwiner states that with regards to the impact on ADLs "[t]he claimant could do all ADLs," and that "[s]he can drive without limitation." (R. 220). Dr. Tuwiner later also states that "[s]he has no limitation with sitting." (R. 220).

duties." § 404.1567(a). In addition, "[s]itting would generally total about 6 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374184 *3 (July 2, 1996). Therefore an inability to sit as described would preclude Plaintiff from working. If there are no jobs at step five that Plaintiff can perform then the ALJ has not met his burden and Plaintiff should be found disabled under the Act.

With that in mind, the idea that Plaintiff has no limitations in ADLs is seemingly contradicted by the ALJ's own observations at the hearing. At the hearing, the ALJ noted on the record that he observed Plaintiff get up three or four times in a half hour period. (R. 298-99, Tr. 22-23). The ALJ further commented that this observation was consistent with Plaintiff's testimony that when she is at the kitchen table she has to get up "a half dozen times an hour." Id.

Certainly the ALJ, in making a determination regarding Plaintiff's credibility, may conclude that this observed conduct was merely for show. However, the ALJ must explain why despite the observations he made at the hearing, he finds Dr. Tuwiner's statements regarding ADLs more credible than contrary statements in the record or his own observations at the hearing.

### 4. The Court Rejects the VE's Testimony

The entire questioning of the VE is difficult to decipher. In turn, the VE's responses based on that line of questioning does not inspire confidence. The Court notes even the Commissioner concedes that "the VE initially listed three jobs in response to the ALJ's hypothetical; however, according to the [Dictionary of Occupational Titles], only one of the three satisfied the RFC requirement for sedentary work." (Def.'s Mot. 6 n.7). Clearly there was confusion by some or all participating. Therefore, the Court rejects the testimony of the VE.

Remanding the ALJ's decision for the reasons previously stated will necessarily have an

impact on the ALJ's RFC. Whether this will in turn have some effect on the testimony of the VE cannot be determined here. The Court does not find it necessary to delve into the myriad of issues surrounding both the questioning and testimony of the VE.

### V. Conclusion

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES Commissioner's Motion and REMANDS this case for further proceedings consistent with this opinion.

September 9, 2011                                             _____/s/_____
                                                             Charles B. Day
                                                             United States Magistrate Judge

CBD/sm